# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PORSCHA CAMPBELL,**

    Plaintiff,

    -vs-                        Case No. 13-C-1066

**ECW, Inc., d/b/a Slice Restaurant,**

    Defendant.

## DECISION AND ORDER

On August 5, 2014, the Court held a hearing on Porscha Campbell's motion for damages against the defaulting defendant, ECW, Inc., d/b/a Slice Restaurant. At the hearing, the Court explained that it would enter judgment on Campbell's request for back pay in the amount of $27,648.29. The Court also indicated that it would further scrutinize the balance of Campbell's motion in light of her testimony at the hearing and the documentary evidence submitted in support of the motion.

The Court already granted Campbell's motion for default judgment, which establishes that the defendant is liable, as a matter of law, for the causes of action alleged in the complaint. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). That said, while a default judgment "conclusively establishes liability, the victor must still prove up damages. Any allegations in the complaint relating to liability are considered true, but allegations going to damages are not." *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014). In other words, while a default judgment

establishes liability, it "does not answer whether any particular remedy is appropriate." *e360 Insight* at 604.

In *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999), the Supreme Court established a three-part framework to determine whether punitive damages are proper in a Title VII action. 42 U.S.C. § 1981a(b)(1). First, the plaintiff must show that the employer acted with "malice" or "reckless indifference" towards the employee's rights under federal law. *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013). Second, the plaintiff must establish a basis for imputing liability to the employer based on agency principles. *Id.* Third, when a plaintiff imputes liability to the employer through an agent working in a managerial capacity in the scope of employment, the employer has the opportunity to avoid liability for punitive damages by showing that it engaged in good-faith efforts to implement an anti-discrimination policy. *Id.* This third requirement falls by the wayside in the context of a default judgment. Obviously, the defendant has failed to appear, so an affirmative defense to an award of punitive damages is irrelevant.

Campbell argues that she is entitled to punitive damages because, as relayed to her by the restaurant's manager, Ryan Pierangeli, Campbell was fired because the restaurant's owner, Jerry Kurth, didn't want any "niggers" working for him. Days later, the assistant manager, Patrick Profita, confirmed to Campbell that Kurth did not want any black people working for him because they are lazy and that Kurth had said "get rid of the niggers." At the hearing, Ms. Campbell explained her understanding

that Mr. Pierangeli was fired by Kurth for objecting to her termination.

Malice or reckless indifference can be established by "demonstrating that the relevant individuals knew of or were familiar with the anti-discrimination laws" but nonetheless ignored them. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001). There is no direct evidence in the record concerning Kurth's mental state at the time of Ms. Campbell's firing. *See, e.g., Robinson v. Ergo Solutions,* LLC, No. 12-147(JDB), --- F. Supp. 2d ---, 2014 WL 819954, at *6 (D.D.C. March 4, 2014) (denying request for punitive damages in the context of a default judgment because the plaintiff "put on no evidence whatsoever regarding the mental state of the alleged wrongdoers in this case, and the complaint is similarly devoid of any such allegations"). At the same time, Kurth's undisputed use of a racial slur supports a finding of maliciousness or recklessness. *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2d Cir. 2001) ("As an alternative to proving that the defendant knew it was acting in violation of federal law, '[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive'") (quoting *Kolstad*, 527 U.S. at 538); *see also Johnson v. Strive East Harlem Empl. Group*, --- F. Supp. 2d ---, No. 12 Civ. 4460(HB), 2014 WL 25666, at *11 (S.D.N.Y. Jan. 2, 2014) (a "plethora of discriminatory comments supports the jury's finding of malice or reckless indifference to Plaintiff's right to work free from race and gender discrimination"). The second requirement — agency — is more easily satisfied, as it seems apparent that Kurth was "employed in a managerial capacity and . . . acting in the scope of employment."

*AutoZone* at 835. Therefore, Campbell is entitled to an award of punitive damages.

Campbell also requests compensatory damages for emotional pain, suffering, mental anguish, and loss of enjoyment of life. § 1981a(b)(3). Campbell explains that she was hospitalized for depression after being fired, and that she experienced suicidal thoughts due to the stress from her termination, the degrading manner in which she was treated, and her perceived inability to support her two young children due to her unemployment. To this day, she remains living in her mother's house and hasn't recovered from the ordeal.

As for the amount, Campbell seeks $50,000 in combined punitive and compensatory damages, an amount equal to the statutory cap on this type of damages for Title VII claims[1] against employers with more than 15 but less than 101 employees. § 1981a(b)(3)(A); Complaint, ¶ 4 (alleging that Slice "continuously and does not have at least 15 employees"). Setting aside the issue of punitive damages, $50,000 is "too much for a moment's pang of distress at being fired," *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1229 (7th Cir. 1995), especially for a job that was held for less than two months. In *Avitia*, the Seventh Circuit halved a $21,000 compensatory damages award for emotional distress in favor of a man who was fired from a job he held for thirteen years. The Court takes seriously the admonition that

---

[1] The Court recognizes that Ms. Campbell also brought a substantive claim under 42 U.S.C. § 1981. There is no statutory cap for such claims, *see Kim v. Nash Finch Co.*, 123 F.3d 1046, 1067 (8th Cir. 1997), but the Court will disregard that aspect of this case because Campbell explicitly requests the maximum amount available under Title VII.

judges and juries "must not be casual with other people's money." *Id.*

That said, it is not necessary to make a specific finding as to the precise amount of non-pecuniary, compensatory damages. Even if the Court were to award a nominal amount ($100, for example),[2] a punitive damages award that consumes almost the entire $50,000 statutory cap is appropriate in this case given the "degree of reprehensibility of the defendant's misconduct," as described above. *AutoZone* at 838 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)). The harm to Ms. Campbell was the result of "intentional malice," and Ms. Campbell was financially vulnerable due to her responsibility to support two young children. *State Farm* at 419 (listing factors courts should use to analyze reprehensibility).

Such an award would not be outsized in comparison to the actual damages suffered in this case. "The Supreme Court has repeatedly declined to set a fixed ratio to limit punitive damages based on constitutional grounds, but it has recognized that in practice, 'few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *AutoZone* at 839 (quoting *State Farm* at 424-25). Even if Campbell is only entitled to a nominal award of compensatory damages, courts consider back pay and front pay in the comparative analysis. *Id.* at 839-40 ("This is a two-to-one ratio between punitive and compensatory damages, and if *back pay is added to the compensatory damages*, the value of the

---

[2] Indeed, even if the Court were to go further and find that Campbell was not entitled to *any* compensatory damages, "punitive damages are not inconsistent with the lack of compensatory damages." *Timm v. Progressive Steal Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998).

punitive damages is actually less than the value of the back pay and compensatory damages by $15,000") (emphasis added); *Chopra v. Gen. Elec. Co.*, 527 F. Supp. 2d 230, 245 (D. Conn. 2007) (for purposes of comparison to punitive damages award, "plaintiff's harm constitutes his emotional harm *and his economic loss as reflected in his front pay and back pay awards*") (emphasis added). The Court will discuss front pay next, but the ratio between almost $50,000 in punitive damages and $27,648.29 in back pay is less than two-to-one and well-within constitutional limits.[3]

Front pay is an appropriate remedy when reinstatement is not available or not advisable because of workplace incompatibility. *Williams v. Pharmacia*, 137 F.3d 944, 951 (7th Cir. 1998). Incompatibility seems obvious here, and it makes little sense to order Ms. Campbell to return to a workplace that caused her psychological damage. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).

As a substitute for reinstatement, front pay is designed to compensate discrimination victims for the reasonable time it would take to find comparable employment elsewhere. *Shick v. Ill. Dep't of Human Servs.*, 307 F.3d 605, 614 (7th Cir. 2002). An employee receiving front pay in lieu of reinstatement "is entitled to front pay only until such time that the employee can reasonably be expected to have moved on to similar or superior employment." *Williams* at 954.

---

[3] The Supreme Court's third "guidepost" for analyzing whether a punitive damages award violates the Due Process Clause is "the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases." *State Farm* at 418. Since "Congress has already defined the statutory cap for the sum of punitive and compensatory damages" at $50,000, "an award of damages at the capped maximum is not outlandish." *AutoZone* at 840.

Campbell requests two years of front pay. This strikes the Court as excessive. Campbell was fired almost two and a half years ago. It shouldn't take an additional two years after that to find comparable employment. Instead of two years, the Court will allow one year of front pay, cutting the requested amount in half.[4]

Finally, in Title VII cases, the Court may "allow the prevailing party" a "reasonable attorney's fee . . . as part of the costs, . . ." 42 U.S.C. § 2000e-5(k). To determine a reasonable fee, the Court uses the "lodestar method, multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Campbell's attorney, Jason Canfield, offers no evidence regarding the reasonableness of his $225.00 hourly rate. The fee applicant "bears the burden of 'produc[ing] satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community.'" *Id.* at 640 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Moreover, Mr. Canfield fails to explain why 46.9 hours is a reasonable number of hours to expend on this litigation. The Court expects, at minimum, an itemized billing statement setting forth all of the work done on this case and the number of hours which correspond to each specific task.

---

[4] The availability of back pay and front pay is not affected by the cap on compensatory and punitive damages. *Johnson v. Spencer Press of Maine, Inc.*, 364 F.3d 368, 378 (1st Cir. 2004).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Campbell motion for an award of damages [ECF Nos. 12, 19] is **GRANTED**;

2. Campbell's attorney, Jason Canfield, is directed to submit a new fee petition within **ten (10) days** of the date of this Order. If Canfield fails to submit an appropriate fee petition within that time frame, the Court will enter judgment on the amounts already awarded.

Dated at Milwaukee, Wisconsin, this 7th day of August, 2014.

                                     **SO ORDERED:**

                                     */s/ Rudolph T. Randa*
                                     **HON. RUDOLPH T. RANDA**
                                     **U.S. District Judge**